**J. E. SHAFFER CO. et al. v. SMITH SEPARATOR CO. et al.**

Circuit Court of Appeals, Eighth Circuit.
March 27, 1928.

No. 7831.

**1. Patents** ⬁328—No. 1,486,162, for gauge cock, not being pioneer invention, and in view of state of prior art, held entitled only to narrow range of equivalents.

Shaffer patent, No. 1,486,162, for gauge cock for purpose of testing the height of water and pressure of steam in boilers, not being a pioneer invention, and in view of the state of the prior art, held, entitled only to a most restricted field of equivalents.

**2. Patents** ⬁328—No. 1,486,162, for gauge cocks for testing height of water and pressure of steam in boilers, held not infringed.

Shaffer patent, No. 1,486,162, for gauge cocks for purpose of testing height of water and the pressure of steam in boilers, which is entitled only to a narrow range of equivalents, held not infringed by Waters patents, Nos. 1,551,184 and 1,551,185.

Appeal from the District Court of the United States for the Northern District of Oklahoma; Franklin E. Kennamer, Judge.

Suit for infringement of patent by the J. E. Shaffer Company and another against the Smith Separator Company and another. Decree dismissing the petition, and plaintiffs appeal. Affirmed.

A. L. Jackson, of Washington, D. C. (C. R. Thurlwell, of Tulsa, Okl., on the brief), for appellants.

George A. Prevost, of Washington, D. C. (Hagan & Gavin, of Tulsa, Okl., on the brief), for appellees.

Before STONE and VAN VALKEN-BURGH, Circuit Judges, and KENNEDY, District Judge.

STONE, Circuit Judge. This is an action for infringement of patent No. 1,486,-162, granted to John E. Shaffer, March 11, 1924. From a decree dismissing the petition, this appeal is brought.

For the purpose of testing the height of water and the pressure of steam in boilers, devices are used called gauge cocks. The device here involved is of that character. Shaffer was the assignee of a patent covering gauge cocks, granted to L. H. Woodruff, October 17, 1922, No. 1,432,510. The patent upon which he bases this action is an improvement upon the Woodruff device. Appellees manufacture a gauge cock in accordance with and as assignee of patents No. 1,-551,184 and No. 1,551,185, granted to M. F. Waters on August 25, 1925—the last of these two patents being an improvement upon the other.

While the answer raised an issue of lack of novelty as to appellants' patent, this issue was not determined by the court; nor was there any determination of the validity of appellees' patents; nor do appellees urge here the invalidity of appellants' patent. The action of the trial court in dismissing appellants' bill was based solely upon a finding of noninfringement and that is the only issue presented here. Therefore, we give no consideration to the validity of any of these patents, but, treating them as valid for the purposes of this appeal alone, will examine the issue of infringement.

A bare inspection of the devices made by appellants and by appellees reveals a similarity in many respects and differences in others. Therefore, as in most patent cases involving infringement of mechanical devices, the first matter for determination is the range of equivalents which is to be properly accorded to appellants' device.

The use of gauge cocks for testing the height of water and the pressure of steam in boilers is old. As far back as 1877, a patent (No. 191,663) was granted to David T. Ellis. From the wording of the specifications in that patent, it is evident that steam gauge cocks were not new then for he states therein:

"The objects of my invention are to provide a secure, simple, and inexpensive packing for the cock, which will not readily wear to an injurious extent or become inoperative by continuous use."

It is probable (as shown by other expressions in the Ellis specifications) that before that time the general form and mechanical action of these gauges had developed. However, we can begin with the Ellis patent, where we find the character of such device to be as follows: It consists of three parts of which one is a metal nozzle, tapped or screwed through the boiler, with an exit or vent at the outer end through which steam or water may flow from the boiler; a valve of softer material, mounted in a weighted handle and arranged to co-act by impinging on the vent and a weighted handle so hinged to the nozzle that it may be lifted to free the vent or left to close the vent by the gravity of its weight. All of these three main features appear in the Ellis patent. To prevent leakage of water or steam from any gauge cock it was obviously necessary that the valve so engage the vent of the nozzle as to make the contact steam and water tight. It was equally obvious that to accomplish this purpose and to prevent corrosion through the escape of water or steam the exposed surface of the valve must be of softer material than the nozzle so that the vent point of the nozzle would sink slightly into the valve and thus seal the opening. This in turn developed another problem which was that this softer substance of the valve, under the pressure of the weighted handle, would wear through if the contact between the valve and the vent were always at the same place and thus, in time, became more or less inoperative and inefficient. It was this last problem or both of these problems which Ellis sought to solve. His method was to seat a cylindrical valve in the weighted handle on a pin around which it could rotate, providing on the periphery of the valve the softer substance upon which the vent might impinge. As this cylinder could be rotated, the entire periphery was subject to use at will.

The record reveals four other patents between Ellis and that of appellants. All of these patents, as well as that of appellants and those of the appellees, relate to various forms of valves designed to present variable

points of contact with the nozzle vent. In short, it is the old problem which engaged the attention of Ellis that these later comers into the field have sought to solve in a better way. Ellis solved it as above-described. Noack (No. 412,890, October 15, 1889) made his valve of four cup shaped disks seated with rubber packing against which packing the nozzle vent would press. By the operation of a thumb-screw, these disks could be changed so that when the packing in one had been worn, another could be turned to take its place. Colvin (No. 435,286, August 26, 1890) employed a disk rotating around a screw with an automatic ratchet which would cause a slight rotation of the valve at every lifting of the handle, thus exposing a new part of the surface of the horizontal face or side of the disk to contact with the nozzle vent, the soft substance on the valve being inserted as rings or washers on each side. Another feature of this valve was that by removal of the axial screw, it might be turned over and a new face or side presented for contact when the former had been worn. Jungbluth (No. 444,360, January 6, 1891) employed a circular valve seated in a circular recess of the handle or lever and held in place by a washer protecting it on the open side and a stem or rod, movably passing through the washer, immovably through the center of the valve then through the bottom of the circular recess where it was held in place by a screw-nut. In this device, the vent of the nozzle engaged the periphery of the valve and the entire periphery was subject to usage and change of contact by loosening the screw-nut and turning the valve by a thumb piece attached to the other end of the stem or rod passing through the valve. The above patents bring the art, as shown by this record, up to the Woodruff patent (No. 1,432,510, October 17, 1922) of which appellants' patent is claimed to be an improvement. Woodruff used a cylindrical valve placed in a cylindrical cavity in the handle or lever, the valve being held in this cavity by a stud-bolt rigidly fixed in the side of the opening and around which the valve might be rotated and a cylindrical cover or washer passing down in its center over the stud-bolt and against the valve and a thumb-screw on the free end of the stud-bolt which could be screwed down on the cover so as to hold the valve rigid. In this cylindrical cover was a small opening through which the valve could be turned by a small instrument thus presenting a new surface on its periphery to the nozzle vent. The above represents the state of the art at the time appellants' device

sought to enter it. Their claims, both of which are here involved, read as follows:

"1. A gauge cock comprising a handle provided with a cylindrical valve cavity therein and having a slot in the end thereof and an elongated slot opening into said cavity, a spindle rigid with said handle and centrally positioned in said cavity, a cylindrical valve of soft metal mounted loosely on said spindle and provided with a radical (radial) flange bearing against the outside of said handle, a nut screwed on the end of said spindle for clamping said flange against said handle for suspending said valve in said cavity, a steam discharge nozzle projecting in said elongated slot and adapted to make indentures on the periphery of said valve, and pivot bolt for pivotally connecting said handle to said steam nozzle.

"2. A gauge cock comprising a weighted handle provided with a cylindrical valve cavity therein and an elongated slot opening into said cavity, a spindle rigid with said handle and centrally positioned in said cavity, a valve loosely mounted on said spindle and provided with a radial flange adapted to bear against said handle about said cavity a nut screwed on said spindle for clamping said flange against said handle whereby said valve is held suspended in said cavity without touching the walls thereof, and a steam discharge nozzle projecting in said elongated slot and adapted to bear against the periphery of said valve and to make indentations therein, and means for pivotally connecting said handle to said nozzle."

[1] A consideration of the construction, elements and operation of appellants' patent and the prior patents reveals that the general combination is the same throughout, consisting of the nozzle screwed into the boiler and the weighted handle containing a softer substance valve wherein different surfaces of the valve may be presented to the vent of the nozzle to take care of the wear of the valve by the nozzle. They all treat the same problem and the differences are minor. Before appellants came into the field, the valve had been made movable so as to present new surfaces to take care of wear. Four of these (Ellis, Colvin, Jungbluth and Woodruff) had used cylinders which could be revolved or moved. Three of these (Ellis, Jungbluth and Woodruff) exposed the periphery of the valve as the contact surface. Colvin exposed the face or side of the cylinder as the contact surface. All of these, and also Noack, placed the valve in cylindrical or annular recesses in the handle weight. From the above, it is evident that the field of invention had

been very much narrowed, if not filled, at the time Shaffer entered it. Therefore, not only is his patent not a pioneer invention, but it is entitled, in this state of the prior art, only to a most restricted field of equivalents.

[2] With this narrow range of equivalents in mind, we next compare the device of appellees with that of appellants to see if it has entered into this restricted area and therefore is an infringement. As in the prior art, both contain the three main features of nozzle and weighted handle hinged thereto carrying a valve. A comparison of Figure 1 in each of these patents will reveal its operation, its likenesses and differences. Figure 1 of patent No. 1,551,184 is not inserted as it differs from appellees' other patent only in that the valve at point of contact is not beveled as shown in Figure 1 below, but is straight surfaced.

There are no points of similarity noticeable beyond those which were old in the art.

The differences are that Shaffer inserts his valve in an annular recess in the handle and controls it with the cover stud-bolt, thumb-screw and opening through the cover, presenting the periphery of the cylinder to contact with the nozzle vent. The appellees place their valve in no recess in the handle, but hold it on the end of the handle by a free bolt passing through the length of the handle and tightened and held in place by a screw at the extreme end of the handle. They operate a change of contact surface of the valve by loosening this bolt and turning the valve by hand and they can reverse the valve by taking out the screw thus using both surfaces. The contact is on the side and not the periphery.

Considering the range of equivalents here permissible and the above differences in construction, the trial court was clearly right in decreeing no infringement and the decree below should be and is affirmed.

Shaffer.                    Waters.